### James McIlwain v. Herbert Gaebe, by next friend.

1. EVIDENCE—*physical condition may be shown by non-expert.* It is competent for a layman to testify with respect to, and to describe the physical appearance of an injury, or of an injured limb or member of the body.

2. EVIDENCE—*propriety of permitting real.* It is generally proper to permit a plaintiff suing for personal injuries to exhibit to the jury the member claimed to have been injured.

3. DEPOSITIONS—*specific objection essential to raise question of propriety of attaching exhibits to.* A specific objection is essential to invoke the rule of law that no exhibits shall be attached to a deposition after the same have been closed.

4. X-RAY PHOTOGRAPH—*when error to exclude.* Where an X-ray photograph showing an injured member has been admitted, it is error to exclude other X-ray photographs which show the appearance of a like normal member.

5. BURDEN OF PROOF—*upon whom, rests to show that injury complained of was not produced by other causes than that complained of.* In an action for malpractice, the burden of proof is upon the

plaintiff to show that the injury complained of was not the result
of his disobedience of instructions shown by the evidence.

Action in case for personal injuries.    Appeal from the Cir-
cuit Court of Washington county; the Hon. Charles T. Moore,
Judge, presiding.    Heard in this court at the February term, 1906.
Reversed and remanded.    Opinion filed September 14, 1906.

J. T. Gibbs, J. Paul Carter and L. D. Turner, for
appellant.

James A. Watts, for appellee.

Mr. Justice Creighton delivered the opinion of the
court.

This was an action in case, in the Circuit Court of
Washington county, by appellee against appellant, to
recover damages for alleged injuries resulting to ap-
pellee, by reason of the failure and neglect on the part
of appellant to bestow the requisite knowledge, skill
and care due from a physician to his patient.

The declaration consists of one count, is in the usual
form for such cases, and avers that appellee was suf-
fering from "a dislocation of the elbow joint of the
left arm; that appellant was a physician and surgeon,
and was retained to treat appellee for that injury and
undertook to do so, and that by reason of his igno-
rance, want of skill and negligence, he failed to discover
the dislocation, failed to reduce it, and failed to restore
the bones of the joint to their natural position."

The evidence in the case is contradictory and con-
flicting, and as the judgment must be reversed for error
of law, and therefore must be remanded, and may be
tried again, we will not enter into a general discussion
of the evidence.

Counsel for appellant ask a reversal on the grounds
of the admission by the trial court of certain evidence
which they contend was improper; the refusal of the
trial court to admit certain evidence offered by appel-
lant; the giving of certain instructions on behalf of

appellee; and the refusal of certain instructions and the modifying of others asked by appellant.

During the trial of the case the court permitted appellee's father, his mother and a neighbor woman who was present, to testify that they told appellant at the time he was making the first examination of the arm, preparatory to treating it, "that it looked like the elbow was out of joint," and they were allowed to state the conversation held with him at that time about the elbow, and to tell the jury how it looked. This evidence is challenged on the alleged ground that it is irrelevant and calculated to prejudice the jury. We are of opinion the challenge is not well taken.

The evidence discloses that appellee had sustained, in addition to the dislocation of the elbow joint, a fracture of both bones of the forearm, and this fracture was also being examined for treatment, in fact appellant was examining the arm to discover what the injuries were, and had undertaken to treat all the injuries to the arm; and he is charged with negligence in failing to discover the dislocation of the elbow joint, in failing to reduce it and in failing to restore the bones of the joint to their natural position. This testimony was clearly relevant to the issues, as tending to prove the negligence charged, when considered with other evidence in the case which tended to prove that appellant did not recognize the condition of the elbow, and did fail to restore the bones of the joint to their natural position. It is contended that these witnesses were laymen and could not know whether the elbow was dislocated or not. This would not disqualify them. They could call the physician's special attention to its appearance, that he might not, in his interest in the other injuries, fail to observe and treat this one also, and this is what they testify they did; and further, laymen may in such cases testify to what was said and done by and in the presence of the parties, at the time, and they may describe the physical appearance of an

injury or of an injured limb or member of the body, as it appeared to them.

In this connection counsel insist that the trial court also erred in permitting the injured arm to be exhibited to the jury. They say this could shed no light upon any material issue in this case. We think counsel's position unsound as to this evidence. It tended to prove the averment in appellee's declaration, that his "elbow joint is stiff" and that he "has permanently lost the use of the said joint and is deprived of the usefulness of his said arm." It is the general practice in this state where damage is claimed for an injured or disabled member of the body, to allow the same to be exhibited to the jury, as a species of "real evidence."

Dr. Jones' testimony was presented in the form of a deposition taken in St. Louis, Missouri, both parties being present by counsel. During the examination it appeared that Dr. Jones had made an X-ray of the elbow, and had the plate present, and this X-ray was repeatedly referred to in both questions and answers, in both the examination in chief and the cross-examination; and at the conclusion of the taking of the deposition, the doctor was asked by counsel for appellee to make a print from the X-ray plate used, and deliver it to the notary to be attached as an exhibit to his deposition. Counsel for appellant interposed a general objection. The notary overruled the objection, the print was made and attached. And upon the trial the print was offered in evidence with the deposition, and admitted over appellant's general objection. Appellant's counsel did not make any specific objection, either at the time of the taking of the deposition or on the trial. The objection was simply "defendant objects." Counsel now insist that it was error to admit the X-ray print in evidence, because it was printed and attached to the deposition after the taking of the deposition had closed; and for the further reason that "it did not and could not, according to the nature of things,

disclose the true condition of the elbow at the time appellant was called to treat it.'' We think neither of these reasons is availing now; for having been present when the deposition was taken, in order to avail of the rule that exhibits cannot be attached after the taking of the deposition has closed, a specific objection should have been made at the time of the request and the ruling of the notary; so that the taking of the deposition might have been adjourned until a print could be made from the plate they were using and be attached. And when the print was offered on the trial of the case, the general objection furnished the court no light in which to rule upon the objection here urged; and further as to the latter reason urged, while it is true that the print perhaps does not and could not show the condition of the elbow at the time appellant was called to treat it, we think it shows the condition so near the time that appellant ceased to treat it, an important period in the history of the case, as to warrant its admission in evidence, to be considered along with the deposition of Dr. Jones and all the other evidence in the case.

After this print and another was admitted on behalf of appellee, appellant offered in evidence on his behalf an X-ray print of a normal elbow of another boy, for the purpose of illustrating how a normal elbow appeared on an X-ray print. To this counsel for appellee objected, and the court sustained the objection. This was error. The ones admitted by the court are before us, and it is clearly apparent that without a representation of a normal elbow joint made by the same process, with which to compare the ones admitted, the jury might get a much exaggerated and very false impression from the ones admitted.

At the instance of appellee the court gave the following instruction: ''The court instructs you that the fact that other surgeons and physicians were called in and examined and treated plaintiff's injured arm, without the knowledge and consent of the defendant,

will not affect the question of defendant's liability, unless it appears from the evidence that the interference of such physician, in some way or manner, tended to produce the injury complained of.''

The giving of this instruction was material error. It placed the burden upon appellant of proving, ''that the interference of such physicians'' *did* ''in some way or manner tend to produce the injury complained of,'' while the law required of appellee that he should prove by a preponderance of the evidence that ''the interference of such physicians *did not* in any way or manner contribute to the injury complained of.'' If the patient has failed to follow the advice of his physician, or departs from his instructions in any material respect, or submitted to treatment by other physicians without his consent, then it devolves upon the patient to prove that such failure, departure, or other treatment did not contribute to the injury complained of.

The instruction given in this case admits that appellee did procure other physicians to interfere with appellant's treatment of the case without his knowledge or consent, and authorizes appellee to recover damages from appellant, without himself making any proof whatever as to the effect of such interference. Giving the instruction its natural meaning, nothing can stand in the way of appellant's liability, but for him to prove, for him to make ''it appear from the evidence that the interference of such physicians in some way or manner tended to produce the injury complained of.'' Such we think is not the law applicable to this class of cases.

Appellant asked the court to give on his behalf twenty-seven instructions. Of these the court gave some as asked; modified others and gave them as modified, and refused a number. The action of the court as to those modified and as to those refused is assigned as error. The modified and refused instructions are too numerous to permit of a detailed discussion here. Instruction No. 11, modified by the court, is of the class

which may properly be denominated cautionary instructions, and, as asked, was in the form and within the scope usually approved in cases where such instructions are permissible. The giving or refusing of such instructions rest largely in the discretion of the trial court. This, however, we think was a proper case in which to give an instruction of that class, and the trial court might well have given it as asked.

Instruction No. 12 was modified by the court. As asked it was as follows: "12. The court instructs the jury that the vital issue on this trial is did the defendant negligently fail to discover the dislocation and fractures of the elbow joint of the left arm of Herbert Gaebe, or having discovered said dislocation and fractures did he fail to properly treat it, according to the practice of ordinarily careful surgeons, and if you believe from the evidence that the defendant, Dr. James McIlwain, did discover said dislocation and having discovered it did treat it in a reasonably careful and skillful manner, according to the ordinary practice of surgeons, then you should find the defendant not guilty."

Under the issues and evidence, this instruction is proper and substantially correct. It should have been given as asked.

For the errors above noted, the judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*